**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Scott Daniel Warren,<br><br>Defendants. | No. MJ-17-0341-TUC-BPV<br><br>**ORDER** |

Currently pending before the Court is Defendant Scott Daniel Warren's Motion to Dismiss Charges Pursuant to the Religious Freedom Restoration Act (Doc. 58) ; Motion to Dismiss Charges for Violation of International Law (Doc. 59); and Motion for Discovery into Selective Enforcement (Docs. 47 & 60). The Government has responded to each motion, and Defendant replied. Govt.'s Response to Def.'s Mot. to Dismiss Charges Pursuant to the Religious Freedom Restoration Act (Doc. 65); Def.'s Reply in Support of Mot. to Dismiss Charges Pursuant to the Religous [sic] Freedom Restoration Act (Doc. 72); Govt.'s Response to Def.'s Mot. to Dismiss Charges for Violation of Int'l Law (Doc. 67); Def.'s Reply in Support of Mot. to Dismiss Charges for Violation of Int'l Law (Doc. 70); Govt.'s Response to Def.'s Mot. for Discovery into Selective Enforcement (Doc. 66); Def.'s Reply to Govt.'s Response to Mot. for Discovery into Selective Enforcement (Doc. 71). Defendant Scott Daniel Warren is charged with one (1) count of operating a motor vehicle in a wilderness area, and one (1) count of abandoning property in a national wildlife refuge. Information (Doc. 1).

The Court was recently reassigned to preside over these cases. These cases raise issues similar to those previously considered by this Court in *United States v. Warren*, Case Number CR-18-00223-TUC-RCC (BPV). The Parties have adequately presented the facts and legal arguments in their briefs and supporting documents, and the decisional process would not be significantly aided by oral argument.

**I.    FACTUAL BACKGROUND**

The Court has previously outlined the relevant factual background in the May 29, 2018 Order (Doc. 35). Those recitations are adopted herein by reference.

**II.    ANALYSIS**

***A.    Federal Rules of Criminal Procedure 12***

Rule 12, Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "A pretrial motion is generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations and quotations omitted). "[A] district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id*. (citations omitted). "As the ultimate finder of fact is concerned with the general issue of guilt, a motion requiring factual determinations may be decided before trial if trial of the facts surrounding the commission of the alleged offense would be no assistance in determining the validity of the defense." *Id.* (citations omitted); *see also United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010). Accordingly, "the district court must decide the issue raised in the pretrial motion before trial if it is 'entirely segregable' from the evidence to be presented at trial." *Schortt Accountancy Corp.*, 785 F.2d at 1452 (citations omitted). "If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense,

the motion falls within the province of the ultimate finder of fact and must be deferred." *Id.* (quotations and citations omitted). As such, "a Rule 12(b) motion to dismiss is not the proper way to raise a factual defense." *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (citations omitted). "[T]he unavailability of Rule 12 in determination of general issues of guilt or innocence . . . helps ensure that the respective provinces of the judge and jury are respected, . . . and that the facts are fully developed before disposition of the case." *Id.* at 670 (citations omitted).

### B. Religious Freedom Restoration Act ("RFRA")

Defendants seek dismissal of the Information "because the Government may not prosecute him for exercising his sincerely held religious beliefs in the necessity to provide humanitarian aid to fellow human beings in need and recover and honor the dead." Def.'s Mot. to Dismiss Charges Pursuant to RFRA (Doc. 58) at 5.

This Court presided over the May 11, 2018 evidentiary hearing in *United States v. Warren*, Case Number CR-18-223-TUC-RCC (BPV), the transcript of which Defendant provided with his motion. *See* Def.'s Mot. to Dismiss Pursuant to RFRA (Doc. 58), Exhibit "1." As the Court observed in that case "No testimony was presented that the statutes at issue compelled the Defendant to do anything in violation of his religious beliefs." *United States v. Warren*, Case No. CR-18-223-TUC-RCC (BPV), Report & Recommendation 5/31/2018 (Doc. 81) at 3, adopted by Order 9/17/2018 (Doc. 127). Moreover, "[t]he laws at issue are of a general nature that apply to all and do not single him or any identifiable group into acting in conflict with their religious beliefs." *Id.* "The Defendant is at best told not to violate the laws that apply equally to all." *Id.* The Court is inclined to deny Defendant's motion in its entirety; however, because Defendant has not had the opportunity to testify in this case, this denial will be without prejudice to re-assert the defense at trial.

### C. International Law

Defendant seeks dismissal of the indictment, alleging that the "Protocol Against Smuggling of Migrants by Land, Sea, and Air renders their conduct non-criminal. Defs.'

Mot. to Dismiss Charges for Violation of International Law (Doc. 59) at 5–11.

The stated purpose of the Protocol Against the Smuggling of Migrants by Land, Sea and Air, Supplementing the United Nations' Convention Against Transnational Organized Crime ("the Protocol) is "to prevent and combat the smuggling of migrants, as well as to promote cooperation among States Parties to that end, while protecting the rights of smuggled migrants." Def.'s Mot. to Dismiss Charges for Violation of International Law (Doc. 59), The Protocol (Exh. "1"), Art. 2. "Smuggling of migrants" is defined as "the procurement in order to obtain, directly or indirectly, a financial or other material benefit, of the illegal entry of a person into a State Party of which the person is not a national or a permanent resident." *Id.*, Exh. "1" at Art. 3, subsec. (a). "Th[e] Protocol shall apply, except as otherwise stated herein, to the prevention, investigation and prosecution of the offences established in accordance with article 6 of this Protocol, where the offences are transnational in nature and involve an organized criminal group, as well as to the protection of the rights of persons who have been the object of such offences." *Id.*, Exh. "1" at Art. 4. The Protocol mandates "[e]ach State Party" to "adopt such legislative and other measures as may be necessary to establish as criminal offences, when committed intentionally and in order to obtain, directly or indirectly, a financial or other material benefit" various activities related to the smuggling of migrants, including providing false documents; acting as an accomplice; and acts which endanger or degrade migrants.[1] *Id.*, Exh. "1" at Art. 6, subsecs. 1–3. Article 6 concludes with the following admonition: "Nothing in this Protocol shall prevent a State Party from taking measures against a person whose conduct constitutes an offence under its domestic law." *Id.*, Exh. "1" at Art. 6, subsec. 4. The Protocol also provides for the return of smuggled migrants, and directs that it shall not be construed to "affect the other rights obligations and responsibilities of States and individuals under international law, including international humanitarian law and international human rights law" prior to the Protocol's authorization. Def.'s Mot. to

---

[1] The Court is broadly summarizing the contents, and nothing herein shall be construed as a limitation on the contents of Article 6.

Dismiss Charges for Violation of International Law (Doc. 59), Exh. "1" at Arts. 18 & 19. As this Court noted in Defendant's felony matter, "Article 20 of the Treaty, which provides the enforcement mechanism for violations of the Treaty, was not adopted." *United States v. Warren*, Case No. CR-18-00223-TUC-RCC (BGM), Report & Recommendation 11/7/2018 (Doc. 134).

"[T]reaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Air France v. Saks*, 470 U.S. 392, 396, 109 S.Ct. 1338, 1341, 84 L.Ed.2d 289 (1985) (quoting *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 431–32, 63 S.Ct. 672, 677–78, 87 L.Ed. 877 (1943)) (alterations in original). "The analysis must begin, however, with the text of the treaty and the context in which the written words are used." *Id.* (citations omitted).

Defendant asserts that he is a humanitarian aid worker who is entitled to protection from domestic criminal prosecution based on the Protocol. As an initial matter, nothing in Defendant's factual basis suggests that any migrants were smuggled. Moreover, nothing in the plain language of the Protocol can be read to suggest that humanitarian aid work is a defense to a signatory State Party's ability to enforce its own domestic law. In fact, the Protocol's plain language reinforces the ability of signatories to enforce their own criminal laws. *See* Defs.' Mot. to Dismiss Charges for Violation of International Law (Doc. 72), Exh. "1" at Art. 6, subsec. 4. Furthermore, the text of the Protocol demonstrates that it is not self-executing—the terms of the Protocol anticipate further action, and as such is "merely [an] executory agreement[] . . . and ha[s] no effect on domestic law absent additional governmental action." *Islamic Republic of Iran v. Boeing Co.*, 771 F.2d 1279, 1283 (9th Cir. 1985). Finally, there is nothing in the Protocol to support a private right of action by Defendants. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) (delineating four-part test to determine a private right of action including whether the Protocol created a federal right in favor of Defendants).

Defendant additionally seeks dismissal based upon the Government's alleged

"outrageous conduct." Defendant alleges a due process violation, because "[i]n bringing this case, the Government has flagrantly disregarded its obligations in truly outrageous ways." Def.'s Mot. to Dismiss Charges for Violation of International Law (Doc. 59) at 13. As noted, *supra*, the Protocol is neither self-executing nor does it provide a private right of action for Defendant. Moreover, the Government enforcing its own domestic laws regarding permits for entrance into a wildlife preserve can hardly be considered "outrageous." Accordingly, Defendant's motion to dismiss (Doc. 59) is denied.

### *D. Selective Enforcement*

Defendant seeks discovery relevant to selective enforcement. *See* Def.'s Mot. for Discovery Into Selective Enforcement (Doc. 60) at 1. Defendant seeks the following discovery:

(1) Any and all information and documentation, including internal communications of the United States Fish and Wildlife Service ("FWS") and communications between FWS and any other law enforcement agency, whether oral or written, concerning the agency's investigation of Dr. Warren or other No More Deaths volunteers for their humanitarian work in the Cabeza Prieta National Wildlife Refuge;

(2) Any and all internal FWS communications and communications between FWS and any other law enforcement agency, including but not limited to the U.S. Attorney's Office and U.S. Border Patrol, whether oral or written, concerning the decision to refer Dr. Warren and other NMD volunteers for criminal prosecution based on their humanitarian aid work in the Cabeza Prieta refuge;

(3) Any and all information or documentation, including any communications, whether oral or written, concerning any FWS interactions with or investigations of any humanitarian aid workers in the Cabeza Prieta refuge, including information regarding any verbal warnings, written citations, or prosecution referrals involving such individuals;

(4) All investigative, incident, and/or arrest reports relating to potential or actual

enforcement action taken against any person for allegedly driving a motor vehicle off a designated public roadway within the Cabeza Prieta National Wildlife Refuge between 2014 and 2018, including but not limited to all notes and interviews concerning the citation, arrest, and/or referral of such cases for prosecution;

(5) All investigative, incident, and/or arrest reports relating to potential or actual enforcement action taken against any person for allegedly abandoning property within the Cabeza Prieta National Wildlife Refuge between 2014 and 2018, including, but not limited to all notes and interviews concerning the citation, arrest, and/or referral of such cases for prosecution;

(6) All materials related to FWS's amendment of the Acknowledgement of Danger and Release and Hold Harmless Agreement and Permit to Access Barry M. Goldwater Range; Cabeza Prieta National Wildlife Refuge; Area A Portion of Sonoran Desert National Monument, Sec. 13;

(7) A copy of all agreements between any government agency and any group or individual, including but not limited to the Samaritans, Humane Borders, Aguilas del Desierto, and others, governing activities in the Cabeza Prieta refuge and/or Barry M. Goldwater Range for any purpose for the past 5 years (including special use permits);

(8) Any materials of any sort relating to policies or practices permitting humanitarian aid or search and rescue operations in the Cabeza Prieta refuge and/or Barry M. Goldwater Range; and

(9) Any and all materials related to agreements and/or protocols between government agencies and No More Deaths related to access to other government managed land areas.

Def.'s Mot. for Discovery Into Selective Enforcement (Doc. 60) at 1–3.

"A government entity has discretion in prosecuting its criminal laws, but enforcement is subject to constitutional constraints." *Rosenbaum v. City and County of*

*San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985). "To prevail on its claim under the equal protection clause of the Fourteenth Amendment, a plaintiff must demonstrate that enforcement had a discriminatory effect and the police were motivated by a discriminatory purpose." *Id.* (citations omitted). "To establish a discriminatory effect . . . , the claimant must show that similarly situated individuals . . . were not prosecuted." *Id.* at 1153 (quotations and citations omitted) (alterations in original). "To show discriminatory purpose, a plaintiff must establish that the decision maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Id.* (quotations and citations omitted) (alterations in original).

Defendant submitted supplemental authority in support of his motion, urging that *United States v. Sellers*, 906 F.3d 848 (9th Cir. 2018), urging the Court to allow further discovery regarding selective enforcement. As an initial matter, in *Sellers*, the Court was concerned that the prosecution of drug dealers was focused on black dealers to the exclusion of all others so that there was selective prosecution. In the case before the Court, the only people exceeding the scope of their permits and abandoning property are associated in some way with "humanitarian groups." Consequently, the enforcement is not selective, but rather against all individuals engaged in this behavior rather than their association with any group. Defendant seeks broad discovery that is unwarranted in this case. Accordingly, Defendant's Motion for Discovery Into Selective Enforcement (Doc. 60) shall be denied.

. . .

### III. CONCLUSION

Based upon the foregoing, the Court finds it appropriate to allow Defendants to urge a RFRA defense at the time of trial, but denies all other motions in their entirety. Accordingly, IT IS HEREBY ORDERED that:

1) Defendant's Motion to Dismiss Charges Pursuant to the Religious Freedom

Restoration Act (Doc. 58) is DENIED WITHOUT PREJUDICE;

2) Defendant's Motion to Dismiss Charges for Violation of International Law (Doc. 59) is DENIED; and

3) Defendant's Motion for Discovery into Selective Enforcement (Doc. 60) is DENIED.

Dated this 27th day of December, 2018.

                                    *Bernardo P. Velasco*
                                    Bernardo P. Velasco
                                    United States Magistrate Judge